374 A.2d 806.
State *vs.* Ralph DeMasi.

JUNE 24, 1977.

Present: Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is an appeal by the state pursuant to G.L. 1956 (1969 Reenactment) §9-24-32 from a pretrial proceeding relative to an indictment[1] returned against the defendant (DeMasi). DeMasi had moved to suppress a proposed in-court eyewitness identification at his pending trial on the indictment. The trial justice granted the defendant's motion, and the present appeal resulted.

The pertinent sequence of events is as follows. On December 27, 1973, two men entered and robbed the Marquette Credit Union. Mrs. LaPrade, a teller at the establishment, witnessed the crime. She described the two bandits as wearing ski masks, but she could see the eyes, nose, and mouth of the one standing next to her. Her observation of that intruder lasted a period from a few seconds to a few minutes, according to her testimony.

---

[1] The indictment, returned May 27, 1975, charges DeMasi with conspiring to commit robbery and with various counts of robbery.

Later that day, at the Lincoln police station, she viewed some 1200 photographs and failed to identify defendant among them. That same night a Lincoln detective came to Mrs. LaPrade's house and exhibited eight photographs to her, of which defendant's was one. There is no indication, nor finding by the trial justice, that the procedure was in any way impermissibly suggestive. Remarking on defendant's photograph at the time, Mrs. LaPrade described him as a customer she had "probably seen in the credit union before." She did not, however, identify DeMasi as the robber. The scene now shifts to defendant's bail hearing some 20 months later, at which Mrs. LaPrade was present.

At the bail hearing DeMasi was seated at counsel table. Mrs. LaPrade was on the witness stand, and the following colloquy took place:

"Q Take a look at this defendant. Take a look at him, don't be afraid of him. (Will you stand up please) Can you identify this defendant?

A I could have seen him before in the bank.

Q Could have seen him before in the bank?

A I almost—I'd almost bet on it.

Q Any of the men, two men in the bank, have his physical characteristics?

A I'd almost say that, you know, he looks like—Yes, because the other man was shorter than him. I would say maybe it was him, and, you know why, for some reason the only thing that kind of sticks, the only thing I remember seeing was his nose and eyes, but that nose, I'm sure it was him.

Q You're sure it was this defendant that was in the bank?

A (Nodded.)"

At the subsequent suppression hearing, the trial justice ruled that what transpired at the bail hearing "could be characterized as a showup."[2]

Having found this confrontation to be the equivalent of a showup, the trial justice stated: "* * * having in mind that she had already chosen a picture of him on the evening of December 27, 1973, the Court concludes that the atmosphere under which she was placed on September 9, 1975, was suggestive to a degree as would permit or have a very substantial likelihood of misidentification." With this suggestive procedure in mind and in light of the fact that Mrs. LaPrade's identification of defendant had progressed from dubious acquaintanceship to positive accusation, the trial justice then considered whether she had an "independent recollection" on which to base her identification. He found she did not and precluded her from testifying otherwise at the pending trial.

Initially, we should note that the findings of fact of a trial justice sitting at a nonjury trial will not be disturbed on review unless such ruling was clearly wrong. *In re Adoption of Minor Child*, 109 R.I. 443, 287 A.2d 115 (1972). In reviewing the record and decision in this case, we cannot say the trial justice overlooked or misconceived material evidence at least insofar as his factual determinations are concerned. Thus, for the state to prevail on appeal, it must show that the trial justice committed an error of law.

The state argues that it was error for the trial court to suppress Mrs. LaPrade's proposed testimony. In its simplest form, the state contends that the question of whether

---

[2] The state argues that this was not a showup but an in-court identification. Whatever the precise legal definition of the procedure, without indulging in legal and semantical gymnastics, there was a one-to-one confrontation between accuser and accused. To that extent we agree with the trial justice that this was in the nature of a showup.

or not Mrs. LaPrade had a sufficient independent recollection to identify defendant is a question of weight and credibility for the jury and not a question of admissibility for the judge. This is not universally true. Where there is a pretrial identification of the defendant which violates either due process[3] or right to counsel, a further inquiry is called for. That inquiry is: Given the suggestive identification procedure, does the eyewitness nonetheless possess a sufficient independent recollection of the event upon which to base an in-court identification of the defendant? This is certainly not a novel holding in our court. In *State v. Benoit,* 117 R.I. 69, 77-78, 363 A.2d 207, 213 (1976), and *State v. Ragonesi,* 112 R.I. 340, 344-45 n.4, 309 A.2d 851, 854 n.4 (1973), we cited the following language with approval:

> "Where the prosecution intends to offer only an in-court identification, the defense may challenge its admissibility. The court should then, on facts elicited outside the presence of the jury, rule upon whether a pre-trial identification by the same eyewitness is violative of due process or the right to counsel. If a violation is found, the court should then decide whether the in-court identification is still admissible because it has an independent source; indeed, it would appear in the interest of expeditious judicial administration for such a ruling to be made in any event." *Clemons v. United States,* 408 F.2d 1230, 1237 (D.C. Cir. 1968), *cert. denied,* 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

We see no necessity to withdraw our approval of that rule in this case.

---

[3] Whether or not the identification is violative of due process, as the trial court noted, depends upon whether the suggestiveness of the procedure creates a substantial likelihood of misidentification. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Foster v. Califonia,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

The appeal is denied and dismissed and the judgment below affirmed.

Mr. Chief Justice Bevilacqua did not participate.

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*John F. Sheehan, Kirk Y. Griffin,* Boston, Mass., for defendant.